**FILED**
**Jul 10, 2026**
**01:40 PM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Miriam Bianco | Docket No. 2025-60-7253 |
| v. | State File No. 24482-2024 |
| Academy of Maryland Farms, et al. | |
| Appeal from the Court of Workers' Compensation Claims Joshua D. Baker, Judge | |

---

### Affirmed and Remanded

---

The employee questions the trial court's denial of her request for additional medical and temporary disability benefits in this interlocutory appeal. The employee injured her back and knee in a fall while working for the employer, and the claim was accepted as compensable. The employer provided medical treatment, and the employee was released at maximum medical improvement with an impairment rating. The employee requested new panels of physicians for her back and knee, which the employer provided; however, the employee contended the panels were not valid. The employee asked the court to order the employer to provide two new panels of physicians and to reinstate temporary disability benefits. After an expedited hearing, the trial court denied both of the employee's requests and ordered the employee to select physicians from the panels previously provided by the employer. The employee has appealed. Having carefully reviewed the record, we affirm the trial court's order and remand the case.

Judge Meredith B. Weaver delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Pele I. Godkin joined.

Miriam Bianco, employee-appellant, pro se

Emily G. Pfeiffer, Brentwood, Tennessee, for the employer-appellee, Academy of Maryland Farms

### Factual and Procedural Background

On April 8, 2024, Miriam Bianco ("Employee") was working as a daycare employee at Academy of Maryland Farms ("Employer") when she tripped and fell, landing on her

right knee.[1]  She immediately reported the injury and was provided medical care that day at CareNow Urgent Care ("CareNow"), where she reported pain on her entire right side. X-rays of her right knee, right elbow, and spine were all interpreted as normal.  She was prescribed a muscle relaxer and an NSAID and told to return for follow-up in one week. She was released to return to work with restrictions on lifting and bending, which Employer was able to accommodate.

Employee returned to CareNow on April 15 with complaints of constant moderate pain that was, at times, more severe.  At a follow-up visit the following week, she was referred to physical therapy, but Employer did not authorize the referral.  Employee continued to follow up at CareNow until she was referred to an orthopedist on June 5, 2024.

On June 17, 2024, Employee saw Physician's Assistant Lacie Baker at OrthoGo.[2] Ms. Baker indicated in her medical report that Employee was there for evaluation of persistent right knee pain since the work accident.  No mention is made in this report of Employee's back injury.  Ms. Baker ordered an MRI of Employee's right knee and renewed her work restrictions.  The MRI of the right knee revealed a meniscus tear and mild patellofemoral arthritis.  At a September 17 appointment, Ms. Baker explained that the tear could have resulted from the work-related accident or that it could be degenerative in nature based on the MRI.  Ms. Baker offered an injection at that visit, but Employee declined, preferring to remain on anti-inflammatory medications.

Ms. Baker arranged for Employee to see Dr. Lucas Richie on November 14 to discuss Employee's surgical options.  At that visit, Dr. Richie stated that greater than fifty percent of Employee's symptoms were related to the meniscal tear, "which may be a direct result" of the work accident in April.  He recommended an arthroscopy, but because Employee wanted to continue conservative treatment, he referred her for additional physical therapy.  When she returned to Dr. Richie in December, Employee told him that her physical therapy had not been approved and that she was not working.  Dr. Richie again recommended surgery, but Employee remained reluctant to proceed with that course of treatment.  At her next appointment with Dr. Richie on January 23, 2025, Employee

---

[1] Employee has identified herself throughout the pleadings as Miriam Ynes Bianco Machado.  The trial court's order identifies Employee as Miriam Bianco.  Furthermore, Employer is identified inconsistently throughout the record. The petition for benefit determination filed by Employee refers to Employer as "Never Grow Up, Inc."  Employer's counsel refers to Employer as "Academy of Harpeth Village," and the dispute certification notice refers to Employer as "Academy of Maryland Farms."  The trial court adopted the latter designation in its Expedited Hearing Order.  In the interest of clarity and consistency, we follow suit for identification of both parties.

[2] It is undisputed that Employee was not initially provided a panel but that Employer told her to treat with Dr. Lucas Richie at OrthoGo.  Employer admitted it does not have an executed panel from Employee, but it argues it sent her a panel on June 10, 2024, which she declined to sign and return.  Employer attempted to submit an affidavit from the claims manager regarding this panel and subsequent panels at the hearing, but it was deemed inadmissible due to an error in the document.  That issue was not raised on appeal.

continued to complain of a sharp "pinching" pain in her right knee. She had begun physical therapy but decided at that point she wanted to proceed with surgery. On that same date, a referral was issued for physical therapy for Employee's back, although the medical note itself does not discuss any lumbar issues.

The recommended surgery did not occur for reasons unclear in the record. On February 27, 2025, Dr. Richie issued a referral for a lumbar MRI, although there is no accompanying medical note in the record. Orders for physical therapy for Employee's back were written by various providers at OrthoGo in May, June, and July, but the only medical note created during that time period contained in the record on appeal is dated July 30, 2025. On that date, Employee saw Ms. Baker and reported her knee did not "give her too much trouble anymore." She also indicated she had lumbar pain, and Ms. Baker noted her lumbar MRI and resulting diagnosis of lumbago with sciatica on the left side. She stated Employee should undergo three more weeks of physical therapy and would be released to return to work without restrictions on August 25, 2025. Employee told Ms. Baker she was concerned about being able to sit on the floor and lift babies should she return to work. The note states: "[Employee] would like a[] [maximum medical improvement] completed on her back. We will refer her to a spine surgeon for complete evaluation [of] her back."

On September 12, 2025, Dr. Richie completed a Form C-30A Final Medical Report ("C-30A") indicating Employee had reached maximum medical improvement ("MMI") for her right knee and spine. He also completed a medical note on September 15, 2025, stating he had not seen Employee in the office for purposes of completing the medical note but that he was "asked" to assess MMI and impairment based on the clinical notes to date. Dr. Richie stated he saw no indication of an acute injury on the lumbar MRI, although there was evidence of nerve root impingement. He reiterated Employee's diagnosis of a meniscus tear in her right knee but stated that she did not wish to undergo surgery. He assigned a combined impairment rating for her injuries of 2% to the body as a whole pursuant to the 6th edition of the American Medical Association's *Guides to the Evaluation of Permanent Impairment*.

By the time Dr. Richie had completed the C-30A, Employer had already scheduled an evaluation with Dr. Thomas O'Brien, a spine specialist, for October 10, 2025. However, when Employee arrived at the appointment, an interpreter was not present, so it was rescheduled for October 23, 2025. The record contains a note indicating Employee attended that appointment and was seen, but there is no medical report for that date contained in the record.

Employee filed a petition for benefit determination ("PBD") on November 12, 2025. Her reasons for filing the PBD were listed as:

3

Excessive delays in therapy approvals. Withholding of mandatory forms (C-42 [and] C-35A). Invalid release issued by PA-C. Denial of certified interpreter at [independent medical examinations]. Improper suspension of [temporary total disability] of [sic] benefits as of September 5, 2025. I am requesting reinstatement of [temporary total disability] benefits and retroactive (back pay) for all weeks owed until a licensed MD/DO validly determines MMI.

At a March 31, 2026 expedited hearing, Employee was the only witness to testify in person. She testified that Employer did not provide a panel initially and that Employer instructed her to see Dr. Richie, who she asserted was not qualified to treat her spine. Although she admitted Employer had sent her panels of physicians for both her knee and spine injuries "a few months" after filing her PBD, she claimed they were not valid because the panel for her knee included Dr. Richie, who, in her view, was not objective. Finally, she contended the MMI determination was invalid because it was the opinion of a physician's assistant rather than a medical doctor. She requested her temporary total disability benefits ("TTD") be reinstated from the time Employer ceased paying those benefits until December 2, 2025, when she began new employment.

In response, Employer argued TTD was appropriately terminated on August 25, 2025, as that is when Employee was released to return to work without restrictions. Although the purported panels were not admitted into evidence, Employer argued it was providing all the benefits to which Employee was entitled, including two new panels of physicians that Employee had refused to sign and return. Employee did not dispute receiving those panels.

In its expedited hearing order issued April 17, 2026, the trial court found that Employee admitted to receiving two panels from Employer and that she had presented no evidence those panels were invalid. The trial court reasoned there was no indication Dr. Richie had refused to see Employee or was not qualified to treat her knee and that her objection to including him on the panel did not render that panel invalid. It also found that Employer properly paid temporary disability benefits from February 27, 2025, until August 25, 2025, and that it did not owe any additional benefits based on the evidence provided to date. Therefore, it ordered Employee to sign and return the two panels provided by Employer and denied her request for additional TTD benefits. Employee has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2025). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to credibility determinations made by the trial court. *Madden v. Holland Grp.*

4

*of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009).  However, "when it comes to deposition testimony, an appellate panel is in the same position as the trial court to make credibility determinations."  *Edwards v. Peoplease, LLC*, No. W2024-01034-SC-R3-WC, 2025 Tenn. LEXIS 514, at *18 (Tenn. Dec. 22, 2025).  Thus, when medical proof is presented by deposition, "the reviewing court may draw its own conclusions about the weight and credibility of the expert testimony."  *Id.*  Moreover, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions.  *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013).  We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer.  Tenn. Code Ann. § 50-6-116 (2025).

## Analysis

In her notice of appeal, Employee alleges several ways in which she believes the court erred, which we restate as follows: (1) improper identification of Employer; (2) improper reliance on panels not admitted into evidence; (3) "failure to apply the mandatory consequence of loss of medical control [pursuant to] § 50-6-204"; (4) reliance on an invalid MMI assessment to permit Employer to stop paying TTD; (5) Employer's failure to provide adequate medical treatment for Employee's spine; and (6) the trial court's "arbitrary" determinations regarding evidence.  Employer responds that, because Employee did not file a brief on appeal, it cannot properly respond to most of the issues Employee seeks to raise and that the trial court's order should be affirmed.[3]

An appellant's failure to file a brief on appeal significantly hinders our ability to conduct meaningful appellate review.  As stated by the Tennessee Supreme Court, "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or

---

[3] Employee filed numerous motions and a brief with the trial court prior to her expedited hearing as well as a motion on appeal to exclude Employer's brief on appeal, which we denied.  At least some of these filings appear to contain what has become known as "artificial intelligence ("AI") hallucinations."  *See Simmons v. Shahidul Islam,* No. M2025-01261-COA-R3-CV, 2026 Tenn. App. LEXIS 225, at *19 n.3 (Tenn. Ct. App. May 21, 2026) (defining AI hallucinations as "a widely reported phenomenon in which [AI] programs create new information which has no basis in fact" (citing Margie Alsbrook, *Untangling Unreliable Citations*, 37 Geo. J. Legal Ethics, 415, 446 (2024))).  Whether Employee drafted these filings with the assistance of AI or not, Employee should be aware that she is responsible for the accuracy of all content she chooses to file with the court.  All litigants, whether represented by counsel or not, must comply with Rule 11 of the Tennessee Rules of Civil Procedure.  They must certify the accuracy of all factual assertions "to the best of the person's knowledge, information, and belief" that are "formed after an inquiry reasonable under the circumstances."  Tenn. R. Civ. P. 11.02.  The parties are further prohibited from filing documents "for any improper purpose, such as to . . . cause unnecessary delay or needless increase in the cost of litigation," and the documents must seek relief "warranted by existing law or by a nonfrivolous argument for the extension . . . of existing law."  Tenn. R. Civ. P. 11.02(1)-(2).  Rule 11 also authorizes a court to impose sanctions on litigants who fail to abide by these mandates.  Tenn. R. Civ. P. 11.03.

arguments for him or her." *Sneed v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010). "[W]here a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Id.* It is not our role to search the record for possible errors or to formulate a party's legal arguments where that party has provided no meaningful argument or authority to support its position. *Cosey v. Jarden Corp.*, No. 2017-01-0053, 2019 TN Wrk. Comp. App. Bd. LEXIS 3, at *8 (Tenn. Workers' Comp. App. Bd. Jan. 15, 2019). Despite the lack of a brief from Employee as the appellant, we nevertheless address the merits of the issues she raised to the extent the record is sufficient to support such an analysis.

## Improper Identification of Employer

First, with respect to whether Employer has been properly identified, a review of the transcript of the expedited hearing reveals that the correct corporate name of Employer was not discussed at the expedited hearing. It does not appear that this issue has been raised in the course of the litigation to date. It is well-settled that issues cannot be raised for the first time on appeal. *See Long v. Hamilton-Ryker*, No. 2015-07-0023, 2015 TN Wrk. Comp. App. Bd. LEXIS 23, at *14-15 (Tenn. Workers' Comp. App. Bd. July 31, 2015). Therefore, this issue is not ripe for our consideration at this stage of the case.

## Improper Reliance on Panels Not Admitted Into Evidence

The trial court ordered Employee to make selections from the two panels Employer had provided, one for her knee and one for her spine. Although we cannot construct Employee's arguments for her, she argued at the expedited hearing that the knee panel was improper because it included Dr. Richie. She offered no argument or explanation as to why the spine panel was purportedly invalid. On appeal, she contends the trial court erred in requiring her to make a selection from the panels even though they were not admitted into evidence due to an error in the claims manager's affidavit.

In her testimony at the hearing, Employee admitted that Employer had provided the panels and that she had not made her selections, signed the panels, or returned them to Employer. The parties stipulated that the panels existed, had been provided, and had not been returned, rendering it unnecessary for the court to make findings of fact on those points. As to whether the panels were legally valid, the trial court found that the inclusion of Dr. Richie did not render the knee panel invalid as Dr. Richie had not declined to see Employee again. The trial court found that, pursuant to applicable rules, as long as Dr. Richie remains "qualified, willing, and able to treat [the injury] in a timely manner," it is not improper to place him on a panel. Tenn. Comp. R. & Regs. 0800-02-01-.06(1) (2026). We agree and conclude this issue is without merit.[4]

---

[4] This determination pretermits Employee's contention that Employer has failed to provide authorized treatment for her alleged back injury.

*Loss of Medical Control*

Employee states in her notice of appeal that the trial court erred in failing to "apply the mandatory loss of medical control pursuant to § 50-6-204." Employee appears to misapprehend a potential consequence of failing to provide a panel. Although the details in the record are scant, it is undisputed that Employer has offered panels of physicians to address Employee's alleged injuries. Employee has refused to sign those panels, arguing incorrectly that they are not valid. In short, she has offered no evidence or legal argument supporting her refusal to make physician selections, sign, and return the panels.

*Invalid Assessment of MMI*

Employee next argues that the MMI determination was based only on the opinion of a physician's assistant rather than a medical doctor.[5] This contention is simply not supported by the record. Dr. Richie completed and signed a C-30A and attached an accompanying medical note discussing Employee's knee and spine conditions, providing impairment ratings for those conditions, and stating Employee had reached MMI. It is undisputed that Dr. Richie is a medical doctor qualified to make such determinations. Employee has provided no countervailing medical proof to support her position that she is not at MMI, despite her testimony at the hearing that she sought unauthorized medical care. In the absence of any proof to the contrary and based on our review of the record, we conclude the trial court did not err in determining Employee was unlikely to be successful in proving at trial that she was not at MMI as of September 12, 2025.

*Arbitrary Determinations of Evidence*

Finally, Employee contends the trial court "arbitrarily" applied Rules 401 and 402 of the Tennessee Rules of Evidence, but she again provides no specific examples, no legal argument, and no authority for this contention. In fact, she does not even make clear what particular evidence is at issue or whether her contention relates to evidence that she believes was improperly *admitted* or improperly *excluded*. Thus, this issue is without merit.

## Conclusion

For the foregoing reasons, we affirm the trial court's order denying Employee's request for additional medical and temporary disability benefits and requiring her to select physicians from the panels she has already been provided if she wishes to obtain authorized medical treatment. We remand the case. Costs on appeal are taxed to Employee.

---

[5] Employee contends her disability benefits ceased on the date she reached MMI, but documentation in the record indicates payments ceased on August 25, 2025, which was the date she was released to return to work without restrictions.